**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 30 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TERRY LYNN NICHOLS,

      Plaintiff-Appellant,

v.

JANET RENO, Attorney General of the
United States; PATRICK M. RYAN,
United States Attorney for the Western
District of Oklahoma,

      Defendants-Appellees.

No. 96-1344

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-M-606)**

---

Michael E. Tigar (Ronald G. Woods, Adam Thurschwell, N. Reid Neureiter, and Jane B.
Tigar with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Sean Connelly, Special Attorney to the U.S. Attorney General (Joseph H. Hartzler,
Special Attorney to the U.S. Attorney General; Douglas N. Letter, Appellate Litigation
Counsel; and Jessica A. Lerner, Trial Attorney, with him on the briefs), U.S. Department
of Justice, Denver, Colorado, for Defendants-Appellees.

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

Terry Lynn Nichols appeals the dismissal of his civil action challenging the method in which the Attorney General authorized United States Attorney Patrick Ryan of the Western District of Oklahoma to seek the death penalty in a separate prosecution against Mr. Nichols. Mr. Nichols contends the Attorney General failed to follow the procedure she instituted in the United States Attorneys' Manual (Manual) and violated the Administrative Procedure Act as well as his rights under the due process clause of the United States Constitution. Although Mr. Nichols sought civil redress to reopen discovery to examine the decision-making process behind the ultimate prosecutorial decision to seek the death penalty under the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591 - 3598 (Act), the district court rejected Mr. Nichols' arguments. The district court dismissed the action with prejudice relying on the principle that prosecutorial discretion is presumptively unreviewable by the courts and rejecting Mr. Nichols' premise the Manual provides him a protectible interest. *Nichols v. Reno*, 931 F. Supp. 748 (D. Colo. 1996).[1] We agree with that decision and affirm the judgment.

---

[1]The parallel criminal action is also pending in the same court. Therefore, before dismissing this action, the district court reminded it would rule again on the motion Mr. Nichols filed in that case also challenging the constitutional validity of the government's notice to seek the death penalty. The motion was subsequently denied. *United States v. McVeigh and Nichols*, 944 F. Supp. 1478 (D. Colo 1996).

At issue is a section of the Act requiring the government to file a notice that the prosecution intends to seek the death penalty as punishment for the capital crime charged in a pending case. The notice must:

> (1) stat[e] that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under [the Act] and that the government will seek the sentence of death; and

> (2) set[] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a).

In the exercise of her supervisory authority over the Department of Justice, the Attorney General amended the Manual after the adoption of the Act. The Manual is a publication which, by its own terms, provides "internal Department of Justice guidance," and is "not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *Manual,* at § 1 - 1.00. The newly added section about which this action revolves "sets forth policy and procedures to be followed in all federal cases in which a defendant is charged with an offense subject to the death penalty, regardless of whether the United States Attorney intends to request authorization to seek the death penalty." *Manual,* at § 9 - 10.000. The procedure requires the United States Attorney to provide defense counsel "a reasonable opportunity to present [to the prosecution] any facts, including any mitigating

factors," after which the prosecutor must submit a Death Penalty Evaluation form and a prosecution memorandum to the Department of Justice in Washington, D.C. *Id.* A committee within the Department of Justice then evaluates the information and makes a written recommendation to the Attorney General whether to seek the death penalty. The ultimate determination is made only after the United States Attorney, the Attorney General's Committee, and the Attorney General consider legitimate law enforcement or prosecutorial reasons and make a determination whether there is "sufficient admissible evidence of the aggravating factors to obtain a death sentence and to sustain it on appeal." *Id.*

On April 19, 1995, following an explosion which destroyed the Alfred P. Murrah Federal Building in Oklahoma City, President Clinton, accompanied by Attorney General Janet Reno, held a news conference at the White House at which, in response to a question, the Attorney General made the statement seized upon by Mr. Nichols as the predicate for this action.

> Q. Ms. Reno, the current crime bill that the President has signed includes a death penalty provision. Assuming you catch these people, will you go for that?
>
> A. 18 U.S.C., Section 844, relates to those who maliciously damage or destroy a federal building. If there is death – if death occurs, the death penalty is available, and we will seek it.

*Reno's Appellee Brief,* at p.6.

On April 22, 1995, the F.B.I. arrested Terry Nichols as a material witness, and he was later indicted on the currently pending charges. On July 11, 1995, United States Attorney Ryan wrote Mr. Nichols' counsel asking him to "present – orally, in writing, or both – any facts, including any mitigating factors, that you would like me to consider in making my recommendation to the Attorney General." Defense counsel responded by demanding Mr. Ryan and Attorney General Reno recuse themselves from the decision, the former for failing to follow Administrative Procedure Act requirements, the latter for having made prior public statements the United States would seek the death penalty. Subsequently, defense counsel wrote Mr. Ryan, arguing against the death penalty, and made oral presentations to Mr. Ryan and the Department of Justice committee. On October 20, 1995, the government filed the Notice of Intention to Seek the Death Penalty against Mr. Nichols, listing five statutory and four nonstatutory aggravating factors to justify the sentence.

Mr. Nichols then filed the civil complaint in this action seeking an order declaring the Notice void and of no effect and prohibiting Mr. Ryan from filing a new notice without following his interpretations of the Manual and 18 U.S.C. §§ 3591 - 3593. Mr. Nichols claimed the Notice violated the Administrative Procedure Act, 5 U.S.C. § 551 et seq., the Due Process clause of the Fifth Amendment, and the Open Meetings Act, 5 U.S.C. § 552b; and, finally, because

the Attorney General had publicly announced her decision to seek the death penalty, she was not an "impartial decider."

Achieving no success in the district court, Mr. Nichols advances essentially the same arguments here. We have considered those arguments and are not persuaded the district court erred. Moreover, we see no reason to expand upon the remarkably cogent analysis engaged in by the district court. Indeed, further elucidation by us would be redundant and simply would not add to the jurisprudence of this circuit. Accordingly, we adopt the reasoning set forth in *Nichols v. Reno*, 931 F. Supp. 748 (D. Colo. 1996), and **AFFIRM** the judgment.